# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2312

_____

| | | |
|---|---|---|
| Kelvin Ray Love, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Walter R. Oglesby, Psychiatrist, | * | |
| Arkansas Department of Correction | * | Appeal from the United States |
| (originally sued as Dr. Oglesby); Mary | * | District Court for the |
| Moore, Infirmary Nurse, Arkansas | * | Eastern District of Arkansas. |
| Department of Correction (originally | * | |
| sued as M. Moore); Brent L. Scott, | * | [UNPUBLISHED] |
| Infirmary Manager, Arkansas | * | |
| Department of Corrections, Cummins | * | |
| Unit (originally sued as B L Scott), | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: March 1, 2001
Filed: March 7, 2001

_____

Before BOWMAN, BEAM, and LOKEN, Circuit Judges.

_____

PER CURIAM.

Arkansas inmate Kelvin Ray Love appeals the District Court's Federal Rule of Civil Procedure 12(c) dismissal of his 42 U.S.C. § 1983 suit against Arkansas Department of Correction Psychiatrist Walter Oglesby, and the Court's subsequent

dismissal of the remaining named defendants, Cummins Unit Nurse Mary Moore and Infirmary Manager Brent Scott. Love alleged that Moore and Scott denied his request for an eye examination, and that Dr. Oglesby failed to warn him of the risk of eye damage from Prolixin, the anti-psychotic drug he had prescribed for Love. Love further alleged that for a period of six to eighteen months Dr. Oglesby prescribed an excessive dose—60 milligrams daily—of Prolixin, which caused Love's body to shake uncontrollably, and that he altered Love's medical records to conceal the improper dose. Love cited to the following Prolixin recommendation in the 1990 Physicians' Desk Reference: under 20 milligrams per day often achieves a therapeutic effect, but a daily dose to 40 milligrams may be required if symptoms are not controlled.[1]

Because the dismissal of Moore and Scott was based on consideration of matters outside the pleadings, we treat their dismissal as a grant of summary judgment. See Fed. R. Civ. P. 12(c). After de novo review, and drawing all inferences in favor of Love, see Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000), we agree with the District Court that the delay-in-eye-examination claim against Moore and Scott fails. A post-complaint assessment of Love's eyes negated his assertions of eye damage from Prolixin, and there is no indication that either of these defendants ignored an acute or escalating eye condition. See Roberson v. Bradshaw, 198 F.3d 645, 648 (8th Cir. 1999) (in determining whether inmate has serious medical need, alleged need or deprivation must be either obvious to layperson or supported by medical evidence); Dulany v. Carnahan, 132 F.3d 1234, 1243 (8th Cir. 1997) (holding that the "objective portion of the deliberate indifference standard requires a showing of 'verifying medical evidence' that the defendants ignored an acute or escalating condition or that delays adversely affected prognosis").

_____

[1]The dosage information is consistent with the 1996 PDR information on Prolixin. See PHYSICIANS' DESK REFERENCE 510-11 (50th ed. 1996).

-2-

We also review de novo the District Court's grant of judgment on the pleadings for Dr. Oglesby, which we must affirm if Dr. Oglesby clearly established that no material factual issues remained and that he was entitled to judgment as a matter of law. See United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000), cert. denied, 121 S. Ct. 761 (2001). We conclude that Dr. Oglesby's alleged failure to warn Love of potential eye damage from Prolixin essentially involved questioning the doctor's professional judgment and thus is not cognizable under section 1983. See Dulany, 132 F.3d at 1239 (holding that "prison doctors remain free to exercise their independent medical judgment.").

However, judgment on the pleadings was improper as to Love's claim that Dr. Oglesby prescribed him an excessive dose of Prolixin and then altered his medical records. We must accept as true Love's allegations that he was given sixty milligrams of Prolixin and experienced uncontrollable shaking and that Dr. Oglesby changed the medical records to conceal the improper dose. Our review of the record convinces us that factual issues existed as to whether sixty milligrams a day was medically unacceptable or dangerous, how Dr. Oglesby administered the drug to Love, and whether Dr. Oglesby was aware of Love's alleged adverse reaction to the dose he was taking. Cf. Roberson, 198 F.3d at 647-48 (reversing summary judgment where there was factual dispute as to whether physician continued to prescribe Glucophage despite inmate's adverse reaction, e.g., dizziness, sweating, nausea, and excessive urination); Lair v. Oglesby, 14 F.3d 15, 17-18 (8th Cir. 1993) (noting Prolixin is powerful neuroleptic drug with side effects including tremors and muscular constriction; evidence showed physician's good faith in course of inmate's treatment, as he began with small dose and then adjusted the dosage and prescribed another drug to ameliorate side effects). Although this claim may be suitable for resolution on a properly supported motion for summary judgment, we find that the dismissal at this juncture was premature.

Accordingly, we reverse the grant of judgment on the pleadings as to the excessive-dose claim against Dr. Oglesby, and remand for further proceedings consistent with this opinion. We affirm in all other respects.

Judge Loken dissents from the reversal regarding Dr. Oglesby.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.